Before addressing the substantive bases for my views contrary to those of the majority, I feel compelled to express my incredulity that these cases involving an amount in controversy of five thousand dollars each are being considered by this court rather than the Court of Civil Appeals. Affirmance by the majority of the order denying the amendments to plaintiffs' complaints seeking more than five thousand dollars as damages is positive concession that these appeals are not within the jurisdiction of this court. To rule otherwise, the majority would, perforce, repeal Rule 13 (j), ARCP.
Regarding the substantive holding and content of the majority opinion, I would summarize my views by stating: If it ain't broke, don't fix it. I do not think the law in Alabama regarding liability for blasting needs changing; therefore, I would not tamper with it.
It seems to me that adopting a rule of strict liability in cases of the nature of those here before us, is not only unnecessary and undesirable but will inevitably lead to severe inhibition of needed development of natural resources vital to the survival of a viable industrialized economy and a society with adequate energy, food, shelter, and creature comforts to make life in that society more than mere organic existence.
Under our system of accountability for one's acts that damage another, we have studiously attempted to adhere to the concept of fault; even when it became necessary to balance the burden between the injured and those responsible for the injury in the case of manufactured goods. See Casrell and Atkins, cited in the majority opinion.
I see no need for a prolix convoluted discussion of the various approaches taken by the courts to determine the nature of the cause of action accruing as the result of damage in consequence of blasting depending upon whether that damage results from vibration, concussion or from casting inanimate objects upon the person or property of another. The simple fact is that the negligence standard as applied in Alabama is a reasonable one and neither places an undue burden of proof on the plaintiff nor presents him with anything approaching an impossible task. No plaintiff is bound by a standard of care of defendant that merely conforms to an acceptable standard to those industries engaged in blasting activities. Proof of proximate cause of damage from blasting is a common sense matter which can be shown by any relevant and material evidence, even if it be circumstantial. E.g., see Cratty v.Samuel Aceto Co., 151 Me. 126, 116 A.2d 623 (1955). *Page 255 
As aptly put by appellees: "It, therefore, becomes clear that the negligence standard as applied to blasters is not just an empirical standard, but involves matters of location, severity, necessity, propriety and techniques, among others. In other words, negligence `according to the relative circumstances' is a much sounder and more applicable standard." Illustrating the ease of carrying plaintiffs' burden and the liberality of proof required to sustain that burden are the facts of Crawford CoalCo. v. Stephens, 382 So.2d 536 (Ala. 1980).
In conclusion: the decision of the majority in this case is not needed; it departs from a well settled body of law with which the bench and bar are familiar; it raises new questions to be resolved without justifiable or desirable results to be served by their resolution, and last but not least, it places an undue burden upon industry without achieving a concomitant desirable social or economic objective.
TORBERT, C.J., and ALMON and BEATTY, JJ., concur.
 APPENDIX Chapter 21 ABNORMALLY DANGEROUS ACTIVITIES
Section
519. General principle
520. Abnormally dangerous activities
520A. Ground damage from aircraft
520B. Liability to trespassers
520C. Liability to licensees and invitees
521. Abnormally dangerous activity carried on in pursuance of a public duty
522. Contributing actions of third persons, animals and forces of nature
523. Assumption of risk
524. Contributory negligence
524A. Plaintiff's abnormally sensitive activity
§ 519. General Principle
 (1) One who carries on an abnormally dangerous activity is subject to liability for harm to the person, land or chattels of another resulting from the activity, although he has exercised the utmost care to prevent the harm.
 (2) This strict liability is limited to the kind of harm, the possibility of which makes the activity abnormally dangerous.
Comment:
a. The general rule stated in this Section is subject to exceptions and qualifications, too numerous to be included within a single Section. It should therefore be read together with §§ 520 to 524A, by which it is limited.
b. As to the factors to be considered in determining whether an activity is abnormally dangerous, see § 520.
c. The word "care" includes care in preparation, care in operation and skill both in operation and preparation.
d. The liability stated in this Section is not based upon any intent of the defendant to do harm to the plaintiff or to affect his interests, nor is it based upon any negligence, either in attempting to carry on the activity itself in the first instance, or in the manner in which it is carried on. The defendant is held liable although he has exercised the utmost care to prevent the harm to the plaintiff that has ensued. The liability arises out of the abnormal danger of the activity itself, and the risk that it creates, of harm to those in the vicinity. It is founded upon a policy of the law that imposes upon anyone who for his own purposes creates an abnormal risk of harm to his neighbors, the responsibility of relieving against that harm when it does in fact occur. The defendant's enterprise, in other words, is required to pay its way by compensating for the harm it causes, because of its special, abnormal and dangerous character. *Page 256 
Comment on Subsection (2):
e. Extent of protection. The rule of strict liability stated in Subsection (1) applies only to harm that is within the scope of the abnormal risk that is the basis of the liability. One who carries on an abnormally dangerous activity is not under strict liability for every possible harm that may result from carrying it on. For example, the thing that makes the storage of dynamite in a city abnormally dangerous is the risk of harm to those in the vicinity if it should explode. If an explosion occurs and does harm to persons, land or chattels in the vicinity, the rule stated in Subsection (1) applies. If, however, there is no explosion and for some unexpected reason a part of the wall of the magazine in which the dynamite is stored falls upon a pedestrian on the highway upon which the magazine abuts, the rule stated in Subsection (1) has no application. In this case the liability, if any, will be dependent upon proof of negligence in the construction or maintenance of the wall. So also, the transportation of dynamite or other high explosives by truck through the streets of a city is abnormally dangerous for the same reason as that which makes the storage of the explosives abnormally dangerous. If the dynamite explodes in the course of the transportation, a private person transporting it is subject to liability under the rule stated in Subsection (1), although he has exercised the utmost care. On the other hand, if the vehicle containing the explosives runs over a pedestrian, he cannot recover unless the vehicle was driven negligently.
Illustration:
1. A, with reasonable care, carries on blasting operations in a closely settled rural district. A has no reason to know of the presence of B's mink ranch nearby. The noise of the blasting frightens the mink and the fright causes them to kill their young. A is not subject to strict liability to B for the loss of the mink.
§ 520. Abnormally Dangerous Activities
 In determining whether an activity is abnormally dangerous, the following factors are to be considered:
 (a) existence of a high degree of risk of some harm to the person, land or chattels of others;
 (b) likelihood that the harm that results from it will be great;
 (c) inability to eliminate the risk by the exercise of reasonable care;
 (d) extent to which the activity is not a matter of common usage;
 (e) inappropriateness of the activity to the place where it is carried on; and
 (f) extent to which its value to the community is outweighed by its dangerous attributes.
Comment:
a. This Section deals only with the factors which determine whether an activity is abnormally dangerous. The general principle of strict liability for abnormally dangerous activities is stated in § 519. The limitations upon strict liability for abnormally dangerous activities are stated in §§ 521-524A.
b. Distinguished from negligence. The rule stated in § 519 is applicable to an activity that is carried on with all reasonable care, and that is of such utility that the risk which is involved in it cannot be regarded as so great or so unreasonable as to make it negligence merely to carry on the activity at all. (See § 282). If the utility of the activity does not justify the risk it creates, it may be negligence merely to carry it on, and the rule stated in this Section is not then necessary to subject the defendant to liability for harm resulting from it.
c. Relation to nuisance. If the abnormally dangerous activity involves a risk of harm to others that substantially impairs the use and enjoyment of neighboring lands or interferes with rights common to all members of the public the impairment or interference may be actionable on the basis of a public or a private nuisance. (See § 822, and Comment a under that Section). The rule of strict liability stated in § 519 frequently is applied by many courts in these cases under the name of "absolute *Page 257 
nuisance," even when the harm that results is physical harm to person, land or chattels.
d. Purpose of activity. In the great majority of the cases that involve abnormally dangerous activities the activity is carried on by the actor for purposes in which he has a financial interest, such as a business conducted for profit. This, however, is not necessary for the existence of such an activity. The rule here stated is equally applicable when there is no pecuniary benefit to the actor. Thus a private owner of an abnormally dangerous body of water who keeps it only for his own use and pleasure as a swimming pool is subject to the same liability as one who operates a reservoir of water for profit.
e. Not limited to the defendant's land. In most of the cases to which the rule of strict liability is applicable the abnormally dangerous activity is conducted on land in the possession of the defendant. This, again, is not necessary to the existence of such an activity. It may be carried on in a public highway or other public place or upon the land of another.
f. "Abnormally dangerous." For an activity to be abnormally dangerous, not only must it create a danger of physical harm to others but the danger must be an abnormal one. In general, abnormal dangers arise from activities that are in themselves unusual, or from unusual risks created by more usual activities under particular circumstances. In determining whether the danger is abnormal, the factors listed in Clauses (a) to (f) of this Section are all to be considered, and are all of importance. Any one of them is not necessarily sufficient of itself in a particular case, and ordinarily several of them will be required for strict liability. On the other hand, it is not necessary that each of them be present, especially if others weigh heavily. Because of the interplay of these various factors, it is not possible to reduce abnormally dangerous activities to any definition. The essential question is whether the risk created is so unusual, either because of its magnitude or because of the circumstances surrounding it, as to justify the imposition of strict liability for the harm that results from it, even though it is carried on with all reasonable care. In other words, are its dangers and inappropriateness for the locality so great that, despite any usefulness it may have for the community, it should be required as a matter of law to pay for any harm it causes, without the need of a finding of negligence.
Comment on Clauses (a) and (b):
g. Risk of harm. An activity that is abnormally dangerous ordinarily involves a high degree of risk of serious harm to the person, land or chattels of others. The harm threatened must be major in degree, and sufficiently serious in its possible consequences to justify holding the defendant strictly responsible for subjecting others to an unusual risk. It is not enough that there is a recognizable risk of some relatively slight harm, even though that risk might be sufficient to make the actor's conduct negligent if the utility of his conduct did not outweigh it, or if he did not exercise reasonable care in conducting it. If the potential harm is sufficiently great, however, as in the case of a nuclear explosion, the likelihood that it will take place may be comparatively slight and yet the activity be regarded as abnormally dangerous.
Some activities, such as the use of atomic energy, necessarily and inevitably involve major risks of harm to others, no matter how or where they are carried on. Others, such as the storage of explosives, necessarily involve major risks unless they are conducted in a remote place or to a very limited extent. Still others, such as the operation of a ten-ton traction engine on the public highway, which crushes conduits beneath it, involve such a risk only because of the place where they are carried on. In determining whether there is such a major risk, it may therefore be necessary to take into account the place where the activity is conducted, as to which see Comment j.
Comment on Clause (c):
h. Risk not eliminated by reasonable care. Another important factor to be taken into account in determining whether the activity is abnormally dangerous is the impossibility *Page 258 
of eliminating the risk by the exercise of reasonable care. Most ordinary activities can be made entirely safe by the taking of all reasonable precautions; and when safety cannot be attained by the exercise of due care there is reason to regard the danger as an abnormal one.
There is probably no activity, unless it is perhaps the use of atomic energy, from which all risks of harm could not be eliminated by the taking of all conceivable precautions, and the exercise of the utmost care, particularly as to the place where it is carried on. Thus almost any other activity, no matter how dangerous, in the center of the Antarctic continent, might be expected to involve no possible risk to any one except those who engage in it. It is not necessary, for the factor stated in Clause (c) to apply, that the risk be one that no conceivable precautions or care could eliminate. What is referred to here is the unavoidable risk remaining in the activity, even though the actor has taken all reasonable precautions in advance and has exercised all reasonable care in his operation, so that he is not negligent. The utility of his conduct may be such that he is socially justified in proceeding with his activity, but the unavoidable risk of harm that is inherent in it requires that it be carried on at his peril, rather than at the expense of the innocent person who suffers harm as a result of it. Thus the manufacture in a city of certain explosives may involve a risk of detonation in spite of everything that the manufacturer may reasonably be expected to do; and although he may not be negligent in manufacturing them at all, he is subject to strict liability for an abnormally dangerous activity.
A combination of the factors stated in Clauses (a), (b) and (c), or sometimes any one of them alone, is commonly expressed by saying that the activity is "ultrahazardous," or "extra-hazardous." Liability for abnormally dangerous activities is not, however, a matter of these three factors alone, and those stated in Clauses (d), (e), and (f) must still be taken into account.
As to strict liability for ground damage resulting from aviation, see § 520A.
Comment on Clause (d):
i. Common usage. An activity is a matter of common usage if it is customarily carried on by the great mass of mankind or by many people in the community. It does not cease to be so because it is carried on for a purpose peculiar to the individual who engages in it. Certain activities, notwithstanding their recognizable danger, are so generally carried on as to be regarded as customary. Thus automobiles have come into such general use that their operation is a matter of common usage. This, notwithstanding the residue of unavoidable risk of serious harm that may result even from their careful operation, is sufficient to prevent their use from being regarded as an abnormally dangerous activity. On the other hand, the operation of a tank or any other motor vehicle of such size and weight as to be unusually difficult to control safely, or to be likely to damage the ground over which it is driven, is not yet a usual activity for many people, and therefore the operation of such a vehicle may be abnormally dangerous.
Although blasting is recognized as a proper means of excavation for building purposes or of clearing woodland for cultivation, it is not carried on by any large percentage of the population, and therefore it is not a matter of common usage. Likewise the manufacture, storage, transportation and use of high explosives, although necessary to the construction of many public and private works, are carried on by only a comparatively small number of persons and therefore are not matters of common usage. So likewise, the very nature of oil lands and the essential interest of the public in the production of oil require that oil wells be drilled, but the dangers incident to the operation are characteristic of oil lands and not of lands in general, and relatively few persons are engaged in the activity.
The usual dangers resulting from an activity that is one of common usage are not regarded as abnormal, even though a serious risk of harm cannot be eliminated by all reasonable care. The difference is sometimes *Page 259 
not so much one of the activity itself as of the manner in which it is carried on. Water collected in large quantity in a hillside reservoir in the midst of a city or in coal mining country is not the activity of any considerable portion of the population, and may therefore be regarded as abnormally dangerous; while water in a cistern or in household pipes or in a barnyard tank supplying cattle, although it may involve much the same danger of escape, differing only in degree if at all, still is a matter of common usage and therefore not abnormal. The same is true of gas and electricity in household pipes and wires, as contrasted with large gas storage tanks or high tension power lines. Fire in a fireplace or in an ordinary railway engine is a matter of common usage, while a traction engine shooting out sparks in its passage along the public highway is an abnormal danger.
Comment on Clause (e):
j. Locality. Another factor to be taken into account in determining whether an activity is abnormally dangerous is the place where it is carried on. If the place is one inappropriate to the particular activity, and other factors are present, the danger created may be regarded as an abnormal one.
Even a magazine of high explosives, capable of destroying everything within a distance of half a mile, does not necessarily create an abnormal danger if it is located in the midst of a desert area, far from human habitation and all property of any considerable value. The same is true of a large storage tank filled with some highly inflammable liquid such as gasoline. Blasting, even with powerful high explosives, is not abnormally dangerous if it is done on an uninhabited mountainside, so far from anything of considerable value likely to be harmed that the risk if it does exist is not a serious one. On the other hand, the same magazine of explosives, the hugh storage tank full of gasoline or the blasting operations all become abnormally dangerous if they are carried on in the midst of a city.
So likewise, the collection of large quantities of water in irrigation ditches or in a reservoir in open country usually is not a matter of any abnormal danger. On the other hand, if the reservoir is constructed in a coal mining area that is honeycombed with mine passages, or on a bluff overhanging a large city or if water is collected in an enormous standing tank above the same city, there is abnormal danger and strict liability when, without any negligence, the water escapes and does harm.
In other words, the fact that the activity is inappropriate to the place where it is carried on is a factor of importance in determining whether the danger is an abnormal one. This is sometimes expressed, particularly in the English cases, by saying there is strict liability for a "non-natural" use of the defendant's land.
There are some highly dangerous activities, that necessarily involve a risk of serious harm in spite of all possible care, that can be carried on only in a particular place. Coal mining must be done where there is coal; oil wells can be located only where there is oil; and a dam impounding water in a stream can be situated only in the bed of the stream. If these activities are of sufficient value to the community (see Comment k), they may not be regarded as abnormally dangerous when they are so located, since the only place where the activity can be carried on must necessarily be regarded as an appropriate one.
Comment on Clause (f):
k. Value to the community. Even though the activity involves a serious risk of harm that cannot be eliminated with reasonable care and it is not a matter of common usage, its value to the community may be such that the danger will not be regarded as an abnormal one. This is true particularly when the community is largely devoted to the dangerous enterprise and its prosperity largely depends upon it. Thus the interests of a particular town whose livelihood depends upon such an activity as manufacturing cement may be such that cement plants will be regarded as a normal activity for that community notwithstanding the risk of serious harm from the emission of cement dust. There is an analogy here to the consideration of the same elements *Page 260 
in determining the existence of a nuisance, under the rule stated in § 831; and the Comments under that Section are applicable here, so far as they are pertinent.
Thus in Texas and Oklahoma, a properly conducted oil or gas well, at least in a rural area, is not regarded as abnormally dangerous, while a different conclusion has been reached in Kansas and Indiana. California, whose oil industry is far from insignificant, has concluded that an oil well drilled in a thickly settled residential area in the city of Los Angeles is a matter of strict liability.
In England, "a pluvial country, where constant streams and abundant rains make the storage of water unnecessary for ordinary or general purposes," a large reservoir in an inappropriate place has been found to be abnormally dangerous. In west Texas, a dry land whose livestock must have water, such a reservoir is regarded as "a natural and common use of the land." The same conclusion has been reached by many of the western states as to irrigation ditches.
Comment:
1. Function of court. Whether the activity is an abnormally dangerous one is to be determined by the court, upon consideration of all the factors listed in this Section, and the weight given to each that it merits upon the facts in evidence. In this it differs from questions of negligence. Whether the conduct of the defendant has been that of a reasonable man of ordinary prudence or in the alternative has been negligent is ordinarily an issue to be left to the jury. The standard of the hypothetical reasonable man is essentially a jury standard, in which the court interferes only in the clearest cases. A jury is fully competent to decide whether the defendant has properly driven his horse or operated his train or guarded his machinery or repaired his premises, or dug a hole. The imposition of strict liability, on the other hand, involves a characterization of the defendant's activity or enterprise itself, and a decision as to whether he is free to conduct it at all without becoming subject to liability for the harm that ensues even though he has used all reasonable care. This calls for a decision of the court; and it is no part of the province of the jury to decide whether an industrial enterprise upon which the community's prosperity might depend is located in the wrong place or whether such an activity as blasting is to be permitted without liability in the center of a large city.
 On Rehearing